IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TOPSHELF MANAGEMENT, INC.,      )
TOPSHELF CO., LLC, TOPSHELF     )
COMPANY, LLC f/k/a SHOWTIME     )
SPORTS AND MARKETING, LLC, and  )
SHOWTIME MOTORSPORTS, INC.,     )
                                )
              Plaintiffs,       )        1:14cv1013
                                )
         v.                     )
                                )
CAMPBELL-EWALD COMPANY,         )
                                )
              Defendant.        )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

In this business dispute, Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 6), and Plaintiffs respond by seeking to amend the complaint (Doc. 11).  For the reasons set forth below, Plaintiffs' proposed amendment would be futile, so the complaint will be dismissed, but without prejudice.

## I.    BACKGROUND

Because Plaintiffs seek to amend the complaint, the court summarizes the facts from the proposed amendment, which are viewed in the light most favorable to Plaintiffs.

Topshelf Company, LLC, successor in interest to Showtime Sports and Marketing, LLC, and Showtime Motorsports, Inc., is a small business owned and operated by Brian Efird.  (Doc. 11 (Am.

Compl.) ¶¶ 1, 3.)  The business leases office space with a related company, Topshelf Management, Inc.  (Id. ¶ 2.)  For purposes of this motion, all Plaintiffs are referred to as "Topshelf."

Defendant Campbell-Ewald Company ("CEC") is a foreign corporation engaged in marketing.  It contracts with the United States Navy to provide simulators for use at shows across the country that would allow prospective recruits to experience what it is like to engage in certain naval activities.  (Id. ¶ 8.)  CEC subcontracted out this work, but when its subcontractor failed to meet its obligations, CEC's performance under its contract with the Navy was hampered.  (Id.)  Thus, in 2008, CEC engaged Topshelf as its subcontractor to assist in providing simulators.  (Id.)  Topshelf was able to meet an imminent deadline for "3-D simulators," and CEC sought to enter into a longer-term subcontract.  (Id. ¶ 9.)

Topshelf alleges that "at the time [CEC] was bidding on its current advertising services contract with the Navy," CEC and two of its representatives, Chuck Spieser and John Schroder, "promised, in both written and oral communications, that [CEC] would provide [Topshelf] a continuing business relationship if [Topshelf] agreed to provide the 4-D 'Mobile Full Motion Movie-Ride Simulators' specified in the Navy contract."  (Id.)  On "numerous occasions," Spieser and Schroder assured Topshelf that the companies were "on the same team" and that once CEC was awarded

2

the prime contract, CEC and Topshelf would execute a long-term contract for the provision of naval simulators. (Id. ¶ 13.) Topshelf is one of only two companies in the nation capable of supplying the 4-D simulators called for in the prime contract. (Id. ¶ 12.) The other, Metropolis Entertainment, Ltd., is Topshelf's business partner, from which CEC also requested a proposal. (Id. ¶ 8.)

Topshelf, in partnership with Metropolis Entertainment, Ltd., agreed to provide these 4-D simulators, which permitted CEC to secure a prime contract with the Navy. (Id. ¶ 10.) This arrangement also helped CEC fulfill the small business subcontracting requirements of the Navy contract. (Id. ¶ 11.) Hoping to receive a five-year subcontract from CEC to provide the simulators, Topshelf submitted multiple proposals to CEC in pursuit of the subcontract. (Id. ¶ 14.) In return, CEC only awarded Topshelf several "short-term" subcontracts, though CEC had told Topshelf that it would receive a subcontract for a longer term. (Id.)

While Topshelf was either pursuing a subcontract or performing one of its short-term subcontracts, CEC began contacting Topshelf's suppliers in an effort to build a new simulator on its own. (Id. ¶ 16.) CEC also sought detailed specifications and other technical information from Topshelf, claiming to need the information in order to match Topshelf's scope

3

of work with the Navy's requested scope of work. (Id.) Plaintiffs allege that, in reality, CEC sought this technical information to enable another company, Doron Precision Systems, to build CEC's simulators.[1] (Id. ¶ 17.)

Despite CEC's request for information about the 4-D simulators, CEC never ordered them from Topshelf, instead requiring Topshelf to maintain and build 3-D simulators. (Id. ¶ 20.) Topshelf became aware that CEC never produced a 4-D simulator, as required by the Navy prime contract, instead building a cheaper 3-D simulator itself. (Id. ¶¶ 21-22.) When Topshelf confronted CEC about its business practices, CEC terminated its business relationship in January 2012. (Id. ¶ 21.) Topshelf alleges that it has suffered significant financial and reputational harm as a result of CEC's deceptions. (Id. ¶ 20.)

On October 29, 2014, Topshelf filed a complaint against CEC in a North Carolina superior court. (Doc. 3.) CEC removed the action to this court based on diversity jurisdiction. (Doc. 1.) Topshelf's complaint brings three causes of action against CEC: negligent misrepresentation; fraud; and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

CEC moved to dismiss the complaint, arguing that Topshelf has

---

[1] Topshelf alleges that it sought both to build its own simulator and to have Doron Precision Systems build them. (Id. ¶¶ 16-17.) These seemingly conflicting allegations are not resolved in the complaint or proposed amended complaint.

failed to plead its claims with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. 6.) Topshelf responded (Doc. 13) and moved to amend its complaint (Doc. 11). The only material change in Topshelf's proposed amended complaint appears to be the addition of the identity of two CEC employees that allegedly made misrepresentations to Topshelf. CEC has filed a reply brief on the motion to dismiss (Doc. 14) and responded to the motion to amend (Doc. 15). Topshelf did not reply to the motion to amend. The motions are now ripe for disposition.

## II. ANALYSIS

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted). Under this rule, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

This plausibility standard, along with Rule 8(a)(2) requiring

only "a short and plain statement of the claim," generally governs the specificity needed for pleadings. But, in cases alleging fraud or mistake, a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Procedurally, a failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999). Rule 9(b) serves several policy objectives: "to provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013).

The heightened standard of Rule 9(b) has certain minimum requirements for the pleader. To meet this standard, the plaintiff must sufficiently describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison, 176 F.3d at 784). This minimum factual description is "often referred to as the who, what, when, where, and how of the alleged fraud." Id. (internal quotation marks omitted). The purpose of this requirement is to satisfy the court

6

"(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." <u>Harrison</u>, 176 F.3d at 784.

This case, which was removed from a North Carolina court, is based on diversity jurisdiction and relies on State-law claims. Rule 9(b)'s heightened pleading requirement applies to State-law claims litigated in federal court. <u>U.S. ex rel. Palmieri v. Alpharma, Inc.</u>, 928 F. Supp. 2d 840, 853 (D. Md. 2013) (citing <u>N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale</u>, 567 F.3d 8, 13 (1st Cir. 2009)). The parties agree that Topshelf's fraud claim is subject to Rule 9(b). (Doc. 4 at 4–5; Doc. 12 at 5.) They dispute, however, whether it is met and whether a heightened pleading standard also applies to Topshelf's claims for negligent misrepresentation and unfair and deceptive trade practices.

**B. Fraud**

Under North Carolina law, fraud requires a "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." <u>Forbis v. Neal</u>, 649 S.E.2d 382, 387 (N.C. 2007) (quoting <u>Ragsdale v. Kennedy</u>, 209 S.E.2d 494, 500 (N.C. 1974)). CEC argues that Topshelf has failed to plead its fraud claim with particularity, as required by Rule 9(b). It argues that Topshelf's

7

amended complaint has only partially cured one defect — the identity of two alleged speakers - among several other discrete defects.

There is no debate that heightened pleading applies to Topshelf's fraud claim. See Fed. R. Civ. P. 9(b). The proposed amendment identifies two persons by name who allegedly made the misrepresentations, but that is all it accomplished. It still fails to identify any individual recipients of the fraudulent statements, information which Topshelf should know. See Devlin v. Wells Fargo Bank, N.A., No. 1:12-CV-000388-MR, 2014 WL 1155415, at *8 (W.D.N.C. Mar. 21, 2014), aff'd, 585 F. App'x 171 (4th Cir. 2014). Neither pleading identifies, moreover, the time or place of any misrepresentation. Topshelf alleges that Spieser and Schroder made the misrepresentations "at the time [CEC] was bidding on its current advertising services contract with the Navy." (Am. Compl. ¶ 9.) However, this allegation, lacking even a year and season, is not particular enough. It is unclear what is even meant by "current" contract, since the complaint suggests there was more than one contract between CEC and the Navy. If CEC in fact made misrepresentations "on numerous occasions," and if CEC has "substantial prediscovery evidence" of its allegations, Harrison, 176 F.3d at 784, then it must provide at least a rough date for the fraudulent statements.

8

Topshelf argues that it need not provide such dates, which are "known exclusively by" CEC. (Doc. 13 at 8.) How CEC alone could know the dates of the representations made to Topshelf is unclear since Topshelf allegedly relied on them. This unpersuasive assertion suggests that Topshelf lacks "substantial prediscovery evidence" of its allegations.

Topshelf relies on Nahigian v. Juno Loudoun, LLC, 684 F. Supp. 2d 731, 738 (E.D. Va. 2010), for the proposition that it need not allege "the exact date and time" of each misrepresentation. True enough, but the Nahigian plaintiffs alleged that misrepresentations were made throughout the spring of 2007. Topshelf's proposed amendment fails to make even this simple factual allegation. Topshelf also points again to Nahigian for the proposition that it need only plead the location of misrepresentations "very generally." This is inaccurate. The Nahagian plaintiffs claimed they were defrauded in the purchase of a residential property situated in a development; they alleged that some misrepresentations were made during visits to the property at issue, and others were made when visiting another of the defendant's properties in "Jupiter, Florida." Id. at 735. By contrast, in neither of Topshelf's complaints is there any indication where any misrepresentation was made. At least some of the misrepresentations were written, and some were oral. While

both types of communication may have ties to some geographical point, Topshelf fails to allege it.

For these reasons, Topshelf's fraud claim has not been pleaded with the particularity required by Rule 9(b) and will be dismissed.

## C.  **Negligent Misrepresentation**

CEC argues that Rule 9(b)'s heightened pleading standard applies to Topshelf's claim for negligent misrepresentation under North Carolina law. (Doc. 7 at 8–9.)  Topshelf has not challenged this argument. (Doc. 13 at 6–11.)[2]

---

[2]  In an unpublished and thus non-precedential opinion, the Fourth Circuit has held that heightened pleading did not apply to a claim of negligent misrepresentation under Maryland law, which has elements similar to the North Carolina tort.  See Baltimore Cty. v. Cigna Healthcare, 238 F. App'x 914, 922 (4th Cir. 2007).  The majority's justification for this holding was that two other circuits had reached the same result for negligent misrepresentation claims based on the law of other States. Id.  Judge Wilkinson, writing in dissent, cited three other circuits requiring heightened pleading in negligent misrepresentation claims. Id. at 925 (Wilkinson, J., dissenting) ("In light of the similarities between fraud and its close cousin negligent misrepresentation, it is hardly surprising that a number of our sister circuits espouse the view that Rule 9(b) does indeed apply to claims of negligent misrepresentation.").  Judge Wilkinson further explained how the policies underlying a specificity requirement were equally served by applying Rule 9(b) to claims of negligent misrepresentation. Id.  The Fourth Circuit has cautioned that its unpublished opinions lack precedential authority and are entitled "only to the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (quoting Hupman v. Cook, 640 F.2d 497, 501 & n.7 (4th Cir. 1981)).  Consequently, as noted herein, multiple courts have continued to apply a heightened pleading requirement to North Carolina negligent misrepresentation claims.  Other courts have relied on Baltimore County to apply only Rule 8 to these claims.  See Deerborne Cottages, LLC v. First Bank, No. 1:11CV178, 2012 WL 1835240, at *7 (W.D.N.C. Apr. 9, 2012), report and recommendation adopted, 2012 WL 1836093 (W.D.N.C. May 21, 2012); Frank Lill & Son, Inc. v. Carter & Burgess, Inc., No. 1:10CV587, 2011 WL 7053627, at *2 (M.D.N.C. Oct. 6, 2011), report and recommendation adopted, 2012 WL 159756 (M.D.N.C. Jan. 18, 2012); Higgins v. Spence & Spence, P.A., No. 5:07-CV-33-D, 2008 WL 506187, at *4 (E.D.N.C. Feb. 21, 2008).

Federal courts have repeatedly found that the North Carolina tort of negligent misrepresentation sounds in fraud and have applied Rule 9(b) to it. See, e.g., Al-Jamal v. Michael Baker Corp., No. 5:12-CV-746-F, 2013 WL 3356573, at *6 (E.D.N.C. July 3, 2013) ("Plaintiff is cautioned that any negligent misrepresentation claim must satisfy Rule 9(b)'s pleading requirements."); Rohlik v. I-Flow Corp., No. 7:10-CV-173-FL, 2011 WL 2669302, at *2 (E.D.N.C. July 7, 2011) ("[C]laims of negligent misrepresentation [also] fall within the purview of Rule 9(b)."); Suntrust Mort., Inc. v. Busby, 651 F. Supp. 2d 472, 485 (W.D.N.C. 2009) (applying Rule 9(b) to negligent misrepresentation and fraud claims); Bear Hollow, L.L.C. v. Moberk, L.L.C., No. 5:05CV210, 2006 WL 1642126, at *4 (W.D.N.C. June 5, 2006) ("This particularity of pleading requirement applies to both fraud and negligent misrepresentation claims."); Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 447 (M.D.N.C. 2005) ("This court adopts the latter approach because the underlying rationales for requiring heightened pleading for fraud equally apply to negligent misrepresentation."); Dealers Supply Co. v. Cheil Indus., Inc., 348 F. Supp. 2d 579, 590 (M.D.N.C. 2004) ("This court adopts the approach that claims of negligent misrepresentation fall within the purview of Rule 9(b). In doing so, the court finds that the underlying rationales for requiring heightened pleading for fraud equally apply to negligent misrepresentation."); Angell

11

v. Kelly, 336 F. Supp. 2d 540, 549 (M.D.N.C. 2004) (applying Rule
9(b) to negligent misrepresentation and fraud claims); Breeden v.
Richmond Cmty. Coll., 171 F.R.D. 189, 202 (M.D.N.C. 1997) ("[A]
claim for negligent misrepresentation falls within Rule 9(b). Like
a claim for fraud or mistake, it is based upon some confusion or
delusion of a party such as by some misrepresentation, omission,
misapprehension or misunderstanding."); see also Cozzarelli v.
Inspire Pharm. Inc., 549 F.3d 618, 629 (4th Cir. 2008) ("Rule 9(b)
refers to 'alleging fraud,' not to causes of action or elements of
fraud. Here, plaintiffs' allegations sound in fraud and thus are
subject to Rule 9(b).").[3]

---

[3] A negligent misrepresentation claim under North Carolina law arises
"when a party justifiably relies to his detriment on information prepared
without reasonable care by one who owed the relying party a duty of
care." Raritan River Steel Co. v. Cherry, Bekaert & Holland, 367 S.E.2d
609, 612 (N.C. 1988). Negligent misrepresentation requires proof of
"justifiable reliance," which is "analogous to that of reasonable
reliance in fraud actions." Marcus Bros. Textiles v. Price Waterhouse,
LLP, 513 S.E.2d 320, 327 (N.C. 1999). As Judge Wilkinson noted in
Baltimore County, these two torts "share two essential elements: both
require that defendant supply false information to plaintiff and that
plaintiff detrimentally rely on the false statement." 238 F. App'x at
925. The two torts differ in the state of mind required of the defendant.
But such a distinction is "not dispositive" concerning Rule 9(b), which
explicitly permits state of mind to be "alleged generally" rather than
with particularity. Id. ("The fact that negligent misrepresentation may
be premised on a 'negligent' false statement is not dispositive: Rule
9(b) is not delimited by an intentionality requirement. Rather, the
plain text extends beyond intentional misrepresentations . . . ."); Fed.
R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a
person's mind may be alleged generally."). The particularity requirement
is "designed to govern claims premised upon a party's misrepresentation,
misapprehension, or misunderstanding; in short, arising out of either
mutual or unilateral confusion, whether intentionally or carelessly
generated." Breeden, 171 F.R.D. at 199. In a case such as the present
one, where the claim of negligent misrepresentation is based on the same

12

Having concluded that Topshelf's negligent misrepresentation claim is also governed by Rule 9(b), the court finds that, for the same reasons given above for the fraud claim, this claim has not been pleaded with specificity and should be dismissed.

**D.    Section 75-1.1 Claim**

The parties strongly disagree whether Rule 9(b) applies to Topshelf's claim for unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1. At the heart of the dispute is a ten-year-old case from this district, upon which Topshelf relies, which declined to apply a heightened pleading requirement to a section 75-1.1 claim. See <u>CBP Res., Inc. v. SGS Control Servs., Inc.</u>, 394 F. Supp. 2d 733, 739 (M.D.N.C. 2005) (The court . . . declin[es] to extend Rule 9(b)'s coverage to claims under North Carolina's Chapter 75.").

A violation of section 75-1.1 requires proof of three elements: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." <u>Walker v. Fleetwood Homes of N.C., Inc.</u>, 653 S.E.2d

---

allegations as the claim of fraud, both claims must be pleaded with particularity. See <u>Icebox-Scoops v. Finanz St. Honore, B.V.</u>, 676 F. Supp. 2d 100, 110 (E.D.N.Y. 2009) ("Claims of negligent misrepresentation must also be pled with particularity if based on the same set of facts as intentional fraud claims."). A careless deception can be fraud enough for Rule 9(b). See <u>Plymouth Cty. Ret. Ass'n v. Primo Water Corp.</u>, 966 F. Supp. 2d 525, 554 (M.D.N.C. 2013) ("Even though they reference the word 'negligence' in pleading these claims, the mere label is not enough to transform the substance of the claims and thus avoid the pleading requirements of Rule 9(b)." (citation omitted)).

393, 399 (N.C. 2007). The crux of such claims is usually determining what conduct suffices as "unfair or deceptive," which is a question of law for the court. See Matthew W. Sawchak & Kip D. Nelson, Defining Unfairness in "Unfair Trade Practices," 90 N.C. L. Rev. 2033, 2041, 2051 (2012).

In CBP Resources, the court declined to extend the particularity requirement for fraud to section 75-1.1 for various reasons. However, several of the reasons either do not apply in the present case or can no longer be maintained in light of more recent developments.

First, the court compared the elements of the two claims and found they were not identical. CBP Res., Inc., 394 F. Supp. 2d at 740 (M.D.N.C. 2005) ("The elements required to be proved for fraud claims are dissimilar from those required under Chapter 75."). However difficult it may be to assess whether conduct qualifies under the statute, it is plain that intentional misrepresentations are per se violations of section 75-1.1 because fraud is, by definition, unfair and deceptive. See Bhatti v. Buckland, 400 S.E.2d 440, 442 (N.C. 1991) ("The case law applying Chapter 75 holds that a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred."); Hardy v. Toler, 218 S.E.2d 342, 346 (N.C. 1975) ("Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . ."); Sawchak & Nelson, supra, at 2043 & n.56.

14

It is true, as CBP Resources noted, that fraud and section 75-1.1 have different elements, but this facial comparison ignores the fact that where a plaintiff predicates his section 75-1.1 claim on the same fraud, he must meet the proof standards for fraud.

Second, the CBP Resources court stated that "[t]he similarity between fraud and negligent misrepresentation, which has caused this court to extend the particularity requirement to negligent misrepresentation, does not apply to conduct which underlies Chapter 75 claims." 394 F. Supp. 2d at 740. While this conclusion was stated with no analysis, other courts — which have analyzed the relationship between fraud, negligent misrepresentation, and deceptive trade practices — have reached the opposite conclusion. See, e.g., F.T.C. v. Lights of Am., Inc., 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) ("[T]he Court finds the similarity between claims for violation of the FTC Act and claims for negligent misrepresentation particularly persuasive.").[4]  As noted above,

---

[4]  Lights of America extended heightened pleading to claims brought under section 5 of the FTC Act, 15 U.S.C. § 45.  Section 5 shares its substantive language with section 75-1.1.  Compare N.C. Gen. Stat. § 75-1.1(a) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."), with 15 U.S.C. § 45(a)(1) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.").  North Carolina's statute is based on section 5, and North Carolina courts consider federal interpretations of section 5 in construing section 75-1.1.  See Henderson v. U.S. Fid. & Guar. Co., 488 S.E.2d 234, 239 (N.C. 1997) ("Our statute is patterned after section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), and we look to federal case law for guidance in interpreting the statute.").  Like Lights of America,

15

heightened pleading was extended from fraud to negligent misrepresentation because both require detrimental reliance on false information. Section 75-1.1 claims founded on fraud distill to analogous elements: detrimental reliance on deceptive information. See Bumpers v. Cmty. Bank of N. Va., 747 S.E.2d 220, 227–28 (N.C. 2013) (holding that "deceptive" practices under section 75-1.1 are those having "the capacity or tendency to deceive," upon which plaintiffs must have actually and reasonably relied to their detriment). Therefore, the analogy between fraud and negligent misrepresentation, which supported the extension of heightened pleading, extends to section 75-1.1 claims based on deceptive representations.

Third, the CBP Resources court reasoned that section 75-1.1 violations "do not carry the same stigma of moral turpitude or damage to reputation that is associated with fraud." CBP Res., Inc., 394 F. Supp. 2d at 739. Protecting a defendant's reputation is one of the purposes for requiring that fraud be pleaded with particularity. McCauley, 710 F.3d at 559. But, as the North Carolina Supreme Court has explained, section 75-1.1 equally implicates a defendant's business reputation. The Court has

---

courts frequently require that section 5 claims involving misrepresentations be pleaded with particularity. See 5A Charles A. Wright et al., Federal Practice and Procedure § 1297 n.11.40 (3d ed. 2004 & Supp.) (collecting cases). Rule 9(b) also applies to state-law equivalents, the siblings of section 75-1.1. See, e.g., Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to a claim under Cal. Bus. & Prof. Code § 17200).

defined both unfairness and deceptiveness in strongly moral terms:
"A practice is unfair when it offends established public policy as
well as when the practice is immoral, unethical, oppressive,
unscrupulous, or substantially injurious to consumers, and a
practice is deceptive if it has the capacity or tendency to
deceive." Bumpers, 747 S.E.2d at 228 (citation and internal
quotation marks omitted). Therefore, the same reputational
concern is equally implicated by claims of fraud and section 75-
1.1 violations.

Fourth, the CBP Resources court distinguished fraud from
section 75-1.1 violations because the former requires both
scienter and actual reliance, while the latter requires neither.
CBP Res., Inc., 394 F. Supp. 2d at 740. This reasoning has been
undermined by intervening case law. As to scienter, Rule 9(b)
does not turn on defendant's state of mind, and intent is not the
essential element of fraud with which Rule 9(b) is concerned. See
Cozzarelli, 549 F.3d at 628–29 (per Wilkinson, J.) (applying Rule
9(b) to a securities claim not requiring proof of scienter, and
noting that "[w]hen a plaintiff makes an allegation that has the
substance of fraud . . . he cannot escape the requirements of Rule
9(b) by adding a superficial label of negligence or strict
liability"); Baltimore Cty., 238 F. App'x at 925 (4th Cir. 2007)
(Wilkinson, J., dissenting) ("Here, fraud and negligent
misrepresentation share two essential elements: both require that

17

defendant supply false information to plaintiff and that plaintiff detrimentally rely on the false statement. The fact that negligent misrepresentation may be premised on a 'negligent' false statement is not dispositive: Rule 9(b) is not delimited by an intentionality requirement. Rather, the plain text extends beyond intentional misrepresentations: Rule 9(b) covers 'fraud and mistake.'" (citation omitted)). Moreover, the North Carolina Supreme Court has made clear that actual reliance must be proved for a section 75-1.1 claim involving misrepresentations, just as with fraud. Bumpers, 747 S.E.2d at 226–27 ("[A] claim under section 75–1.1 stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause. Such a requirement has been the law of this state for quite some time.").

Fifth, the CBP Resources court reasoned that requiring heightened pleading for section 75-1.1 claims would not discourage frivolous lawsuits, one of the purposes of the rule as it applies to fraud. The court noted, "Because claims of unfair and deceptive trade practices rarely stand alone, but are often attendant to claims such as fraud, misrepresentation, breach of contract, and deceptive advertising, requiring particularity for Chapter 75 claims would do little to protect defendants from frivolous lawsuits." 394 F. Supp. 2d 739.

18

It is certainly true that section 75-1.1 claims are often tacked on to other breach of contract and business torts.[5] The reason is largely in the remedy: Litigants prevailing on these claims are entitled to treble damages and an opportunity to recover attorneys' fees. N.C. Gen. Stat. § 75-16. The fear of frivolous section 75-1.1 claims led the North Carolina General Assembly to permit defendants an award of attorneys' fees for section 75-1.1 claims brought frivolously and maliciously. N.C. Gen. Stat. § 75-16.1; see also Marshall v. Miller, 276 S.E.2d 397, 404 (N.C. 1981) ("[Section 75-16.1] is an important counterweight designed to inhibit the bringing of spurious lawsuits which the liberal damages provisions of G.S. 75-16 might otherwise encourage."). Nevertheless, claims for treble damages raise the stakes of litigation and threaten to increase the in terrorem settlement value from the outset.[6]

In the present case, Topshelf brought a fraud claim outright,

---

[5] For this reason, the Fourth Circuit has cautioned district courts to be wary of attempts to shoehorn ordinary business disputes into claims for unfair and deceptive trade practices. See, e.g., Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (finding that "[g]iven the contractual center of this dispute, plaintiffs' [UDTPA] claims are out of place"); PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009) ("This claim is simply an attempt to multiply the damages for an ordinary breach of an agreement by re-characterizing the breach as a violation of the UDTPA.").

[6] As CBP Resources acknowledged, "[P]art of the purpose of Rule 9(b) is to protect defendants from groundless accusations of fraud incited by the possibility of an in terrorem increment in the settlement value of a lawsuit." 394 F. Supp. 2d at 739 (brackets and internal quotation marks omitted).

as well as a section 75-1.1 claim predicated on precisely the same alleged misrepresentations. To treat the two claims with two different pleading standards would permit Topshelf to bring a disguised fraud claim without putting CEC on notice of the "particular circumstances" of its claim and without having to show "substantial prediscovery evidence" of these circumstances. Harrison, 176 F.3d at 784. Thus, this court need not decide whether Rule 9(b) governs all section 75-1.1 claims. It is sufficient, in this case, to hold that Rule 9(b) applies to section 75-1.1 claims alleging detrimental reliance on false or deceptive representations.

Thus, Rule 9(b) applies to Topshelf's section 75-1.1 claim, which is based on Topshelf's detrimental reliance on CEC's alleged misrepresentations. (Am. Compl. ¶¶ 14, 20–23.) For the reasons given for the fraud and negligent misrepresentation claims, this claim also lacks sufficient particularity under Rule 9(b) and will be dismissed.

## III. CONCLUSION

Because Topshelf's original and proposed amended complaints fail to satisfy the pleading standards of Rule 9(b), Topshelf's motion to amend will be denied as futile. Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011); In re PEC Solutions, Inc. Sec. Litig., 418 F.3d 379, 391 (4th Cir. 2005).

However, because the pleading failures may be curable for the reasons noted herein, the dismissal will be without prejudice.

IT IS THEREFORE ORDERED that Topshelf's motion to amend (Doc. 11) be DENIED, CEC's motion to dismiss (Doc. 6) be GRANTED, and this case be DISMISSED WITHOUT PREJUDICE.

/s/   Thomas D. Schroeder
United States District Judge

August 3, 2015